Tuttman, Kathe M., J.
The plaintiff, Public Access Tours, Inc., d/b/a Moby Duck (“Moby Duck”), is the operator of duck boat (amphibious vehicle) tours in Salem and Gloucester, Massachusetts. Moby Duck originally filed this action in 2003 seeking judicial review of a decision by the defendant, Public Access Board (“the Board”), to cease issuing special use permits to commercial duck boat operators for use of boat ramps under the Board’s jurisdiction. The Board is an administrative body within the Department of Fish *421 and Game (“the Department”)[2] created pursuant to G.L.c. 21, §17A to designate, purchase, develop and administer public areas of access to Commonwealth waters as well as hiking, skiing and snowmobiling trails. The Board has authority to issue commercial use permits for public access facilities and to regulate the number of users of these facilities. This matter came before the Court for hearing on the plaintiffs motion for summaiy judgment and the defendants’ cross motion for summaiy judgment. The parties request declaratory relief.[3] Plaintiff seeks (1) a determination that a 2005 regulation prohibiting the operation of amphibious vehicles or duck boats in public access facilities under the management and control of the Board is unlawful and should be struck down and an order vacating the Board’s final decision based on the 2005 regulation; and (2) a permanent injunction preventing the defendants from “unlawfully denying Moby Duck access to Salem Harbor” via its Winter Island boat ramp in Salem. Defendants seek a declaratory judgment that the regulation was lawfully enacted and that it precludes the current and future operation of amphibious vehicles in all public access facilities under the Board’s management and control, including the Winter Island boat ramp. Because I find that the Board followed proper rule-making procedures in formulating its lawful policy of denying special use permits to all commercial amphibious vehicle operators, as more fully discussed below, the plaintiffs motion is DENIED and the defendants’ motion is ALLOWED.
BACKGROUND
In 1997, Moby Duck began conducting amphibious sightseeing tours in and around Salem Harbor. The tours were launched from the public access boat ramp located on Winter Island in Salem. The ramp was constructed pursuant to a permit issued by the United States Army Corps of Engineer (“the Corps”).[4] Prior to 2001, the Board approved Moby Duck’s annual applications for a special commercial use permit authorizing it to launch its vehicles from the Winter Island ramp. In 2000, the Board adopted a policy prohibiting the future operation of amphibious vehicles at such facilities, and subsequently denied Moby Duck’s 2001 application for a special use permit. In 2003, the plaintiff filed this action seeking judicial review of the Board’s decision. The parties filed cross motions for summaiy judgment, which were considered by another justice of this Court (Bohn, J.). Judge Bohn found that the Board’s policy constituted administrative rule-making, and that the Board had failed to follow specific rule-making procedures required by G.L.c. 21, §17A, the Board’s enabling legislation,[5] and c. 30A, §2 in formulating the policy. Judge Bohn invalidated the Board’s denial of Moby Duck’s permit application, and remanded the matter to the Board for further consideration, with a directive to comply with the procedures defined in G.L.c. 21, §17A and c. 30A, §2. The Board held a series of public hearings and ultimately adopted the challenged regulation, effective August 12, 2005. The regulation states: “It is unlawful to operate any amphibious vehicle, airplane or seaplane in apublic access facility.” 320 C.M.R. §2.02(1).[6] The stated purposes for the regulation as noted in the Department’s official filing statement submitted to the Secretary of State were as follows:
(1) To ensure the continued physical integrity of the boat ramps; (2) to prevent the unnecessary closing of boat ramps to repair damage caused by amphibious tour boats to the pre-fabricated ramp sections that lie below mean low water; (3) to protect the public safety at boat ramp parking facilities; (4) to assure that boat ramps are used to launch boats for the purpose of recreational boating and fishing in coastal and inland waters; (5) to prevent the use of boat ramps for purposes of tourism or commerce; (6) to prevent the exposure of the Commonwealth to unnecessary tort liability; and (7) to assure the continued availability of federal funds to maintain and repair boat ramps.[7]
Prior to the adoption of the new regulation, on March 21, 2005, Moby Duck submitted its 2005 application for a special use permit. On August 29, 2005, relying on the new regulation, the Board denied Moby Duck’s 2005 application. The parties then filed these cross motions for summaiy judgment.[8]
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
II. Review of Agency Regulations
Regulations promulgated by a government agency are subject to “[a] highly deferential standard of review.” Massachusetts Fed’n of Teachers v. Board of Educ., 436 Mass. 763, 771 (2002). “Aparty challenging the validity of a regulation must prove ‘that the regulation is illegal, arbitrary or capricious.’ ” Id., quoting Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. *422 707, 722 (1983). A court “must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Massachusetts Fed’n of Teachers, 436 Mass. 763, 771 quoting Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844, 855 (1977). Here, Moby Duck claims that the 2005 regulation is invalid for three reasons: (1) it is contrary to the Department’s enabling legislation; (2) it is contrary to permit conditions imposed by the Corps in connection with its approval of the construction of the Winter Island boat ramp; and (3) it impermissibly burdens interstate commerce by restricting Moby Duck’s access to the “navigable waters” of Salem Harbor.
A.Compliance With the Department’s Enabling Legislation
The Legislature has conferred broad authority on the Department to promulgate regulations relating to its statutory responsibilities, which including the maintenance, operation and improvement of public access facilities such as the boat ramp in question.[9] The purposes identified in the Department’s official filing statement demonstrate that the 2005 regulation is integrally related to the Department’s responsibilities. “In reviewing a regulation, a court cannot ‘substitute [its] judgment as to the need for a regulation or the propriety of the means chosen to implement the statutory goals, for that of the agency, so long as the regulation is relationally related to those goals.’ ” Massachusetts Fed’n of Teachers, 436 Mass. 763, 772, quoting American Family Life Assur. Co. v. Commissioner of Ins., 388 Mass. 468, 477 (1983). Regulations should be enforced unless they are “irreconcilable with an agency’s enabling legislation.” Massachusetts Fed’n of Teachers, 436 Mass. 763, 772, quoting Quincy v. Massachusetts Water Resources Auth. 421 Mass. 463, 468 (1995). Here, the regulation should be upheld because its identified purposes are consistent with the Department’s enabling legislation.
B.Corps’ Permit Conditions
It is unlikely that Moby Duck has a private right of action to enforce any conditions that the Corps may have imposed on the construction of the Winter Island boat ramp pursuant to its permitting authority. See Calffornia v. Sierra Club, 451 U.S. 287, 289-90 (1981); Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 545-46 (1999). Even if Moby Duck has such a right of action, however, the 2005 regulation is not contrary to the permitting conditions in question. The conditions provide that the boat ramp may not unreasonably interfere with public access to the navigable waters adjacent to the ramp. The regulation does not unreasonably interfere with public access to the adjacent waters; it merely limits the use of public access boat ramps by excluding amphibious vehicles for several reasons that are consistent with the Board’s statutory authority.
C.Access to Federal Navigable Waters
Moby Duck contends that the 2005 regulation violates the Commerce Clause of the United States Constitution by restricting the public’s right of access to the federal navigable waters of Salem Harbor. The waters of Salem Harbor are federal navigable waters to which the public has a right of access, see United States v. Harrell 926 F.2d 1036, 1038-39 (11th Cir. 1991). Additionally, Moby Duck’s business involves interstate commerce, as its customers are generally tourists who reside in many different states and foreign countries. See Duck Tours Searari, Inc. v. City of Key West, 875 So.2d 650, 657 (Fla.App. 3 Dist.), rev. denied, 890 So.2d 1114 (2004), and cases cited.
The Commerce Clause “directly limits the power of the States to discriminate against interstate commerce [by prohibiting] economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.” New Energy Co. v. Limbach, 486 U.S. 269, 274 (1988). Moby Duck has not demonstrated that the 2005 regulation discriminates against interstate commerce. The regulation does not treat out-of-state tour operators differently from in-state tour operators. Moreover, the state does not relinquish all regulatory authority with regard to issues or concerns that implicate interstate commerce. “ [N]ondiscrimina-tory regulations that have only incidental effects on interstate commerce are valid unless ‘the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.’ ” Oregon Waste Sys., Inc. v. Department of Envtl. Quality, 511 U.S. 93. 99 (1994), quoting Pike v. Bruce Church Inc. 397 U.S. 137, 142 (1970).
To support its assertion that the 2005 regulation impermissibly restricts public access to the Harbor, Moby Duck relies upon the case of Atlanta School of Kayaking, Inc. v. Douglasville-Douglas County Water and Sewer Authority, Inc., 981 F.Sup. 1469 (N.D.Ga. 1997). In that case, a local regulation prohibited canoes, kayaks and similar craft paddling downstream on the Dog River in Georgia from entering a recreational boating and fishing area in a reservoir created by a dam on the river in order to exit the river. Access to the reservoir was restricted to county residents and property owners and their guests. The plaintiffs were a kayaking school and private kayaking instructor operating their businesses on the river. The paddlers could not exit further upstream from the dam because all of the adjacent property was privately owned. The regulation effectively prohibited the use of the river by all paddlers as it eliminated the only point of egress. The Court issued a preliminaiy injunction, finding that the plaintiffs had shown a substantial likelihood of success on the merits of their claim that the regulation impermissibly restricted their right of public *423 access to federal navigable waters and caused non-pecuniary, irreparable harm. Here, however, Moby Duck has not established, nor even alleged, the unavailability of another point of access for amphibious vehicles to Salem Harbor. Furthermore, unlike the regulation in Atlanta School of Kayaking, the challenged regulation here prohibits only amphibious vehicles from using the Winter Island boat ramp, it does not prohibit other boats from using the ramp to enter Salem Harbor.
Given the non-discriminatoiy character of the 2005 regulation and its clearly articulated purposes, which are rationally related to legitimate public interests as identified in its filing statement, supra, the regulation does not violate the Commerce Clause.
III. Denial of Prior Permit Applications
To the extent that the plaintiff seeks to challenge the denial of prior permit applications, including the 2004 permit application, such a challenge is now moot in light of this Court’s view that the 2005 regulation was properly enacted and is lawful.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment is DENIED and the defendants’ cross motion for summary judgment is ALLOWED. I find that the Department of Fish and Game lawfully enacted 320 CMR §2.02(1). Further, I find that the regulation precludes the current and future operation of amphibious vehicles in all public access facilities under the Department’s management and control, including the Winter Island boat ramp. Accordingly, the complaint is hereby DISMISSED. Judgment shall enter for the defendants.

The Department of Fish and Game was formerly known as the Department of Fisheries, Wildlife and Environmental Law Enforcement.

See G.L.c. 231, §1 and §2.

The permit was issued pursuant to the following conditions: “There shall be no unreasonable interference with navigation by the existence or use of the activity authorized herein, and no attempt shall be made by the permittee to prevent the full and free use by the public of all navigable waters at or adjacent to the activity authorized herein.”

G.L.c. 21, §17A was repealed in 2003. New enabling legislation (G.L.c. 21A, §11B) took effect in July 2003. Like its predecessor, G.L.c. 21A, §11B requires a public hearing prior to the adoption of regulations by the Board.

It is undisputed that Moby Duck’s vehicles are amphibious vehicles and that the Winter Island boat ramp is a public access facility as defined. 320 C.M.R. §2.01.

During the public hearing process, a letter from the United States Department of the Interior, Fish and Wildlife Service was made part of the rule-making record. The letter confirmed that no Federal Aid in Sport Fish Restoration (FSR) funds would be available for the maintenance or reconstruction of any state-funded public access facility, including the Winter Island boat ramp, which permitted operation of amphibious vehicles.

While Moby Duck challenges the lawfulness of the 2005 regulation, it does not challenge the Board’s compliance with the mandates of G.L.c. 21, §17 and c. 30A, §2 in enacting the regulation.

See G.L.c. 21A, §2(28) and §11B.