JOSEPH P. DiGIOVANNI & another[1] vs. BOARD OF APPEALS OF
ROCKPORT & another.[2]

Essex.    September 13, 1984. — February 13, 1985.

Present: WARNER, KAPLAN, & ROSE, JJ.

*Zoning,* Variance; Judicial review; Board of Appeals:  decision.

Since the judge who heard a proceeding for judicial review of a decision by
    a town's board of appeals respecting an application for a zoning variance
    lacked the power to substitute a form of relief different from that requested
    from the board, it was error for him to characterize the application as
    an appeal from the building inspector's stop work order and to conclude
    that the application was constructively granted by the board's failure to
    act on it within the time specified by G. L. c. 40A, § 15. [343-345]
A town's board of appeals did not exceed its authority in denying a land de-
    veloper's petition for a zoning variance where construction already un-
    dertaken by the developer on the locus was in violation of a preexisting
    variance, where the only "hardship" which the developer suffered was
    the cost of correcting the unlawful siting of his buildings, and where
    the board did not act unreasonably or arbitrarily in requiring the developer
    to conform his construction to the express terms of the variance. [345-
    350]


CIVIL ACTION commenced in the Gloucester Division of the
District Court Department on June 1, 1982.

The case was heard by *James W. Killam, III,* J.

The case was submitted on briefs.

*David Lee Turner* for the defendants.

*Walter H. McLaughlin, Jr.,* for the plaintiffs.

ROSE, J.  The board of appeals of Rockport (board) appeals
from the judgment of the District Court (denominated "Findings
of the Court") annulling the board's decision that partially

---

[1] Rowe Estates, Inc., a company wholly owned by DiGiovanni which
succeeded him as owner of the property that is the subject of this appeal.

[2] The building inspector of Rockport.

denied DiGiovanni's petition for a variance.[3] The board also contests the order of a District Court judge purporting to reinstate DiGiovanni's building permits. In the District Court, DiGiovanni successfully argued that a petition he submitted to the board on February 12, 1982, was constructively granted because the board did not act upon it within the statutory time limit. The judge also accepted his alternative argument that the board acted arbitrarily in denying him all the relief requested in a second, March 5, 1982, petition.

The relevant facts may be summarized as follows. In 1978, DiGiovanni obtained a variance from the board to construct a cluster development on Rowe Point in Rockport. This variance was granted for a development "as shown by the plans submitted to (and on file with) this Board." At subsequent meetings, DiGiovanni asserts, he showed the board plans ("1980 plans") that disclosed modifications of the 1978 plans, including, among other things, changes in the location, orientation and design of the buildings. DiGiovanni concedes, however, that he never specifically called these modifications to the board's attention. Later, the Rockport building inspector issued foundation and building permits on the basis of the 1980 plans.

After DiGiovanni had poured eighteen foundations and substantially completed four units, the building inspector issued a stop work order. The building inspector's letter explained that the order was issued because construction was not in accordance with DiGiovanni's 1978 plans. It went on to state that DiGiovanni could request a modification of the 1978 variance or appeal the stop work order to the board pursuant to G. L. c. 40A, § 15.[4]

The form the board provides for zoning-related matters contains four "boxes." Applicants mark a box to indicate whether they are seeking a special permit or a variance or are taking an appeal from an *attached* decision. For the uncertain, a fourth box, marked "and such other and further relief as the Board

---

[3] Appeals from the District Court in G. L. c. 40A, § 17, cases are to this court. *Walker* v. *Board of Appeals of Harwich,* 388 Mass. 42, 47-50 (1983).

[4] References to sections of G. L. c. 40A are to those sections as they appear in St. 1975, c. 808, § 3.

deems appropriate," is provided. On February 12, 1982, Di-Giovanni filed with the town clerk a form that requested "and such other and further relief as the Board deems appropriate." Specifically, he asked that the board grant "further relief from the plans that are on file with the Board of Appeals" concerning "Knowlton's Field."[5] He did not attach the building inspector's stop work order to the form (as is required for "appeals"), nor did he specify what "further relief" he wanted.

On February 23, 1982, DiGiovanni met informally with the board. The substance of the discussion, as reflected by the minutes, was that DiGiovanni felt he was in substantial compliance with the 1978 plans. The board, however, apparently felt that a public hearing and modification of the variance would be required before he could continue construction.

On March 5, 1982, DiGiovanni filed a second application with the town clerk. Although he checked none of the boxes on this application, he specified therein that this version was a "[p]etition . . . for modification of [a] variance . . . so that the building configurations and placements can be as shown on the [modified] plan . . . attached hereto."

What subsequently became of the February 12 application was the subject of conflicting testimony at trial. The town clerk recalled that he had returned the application to DiGiovanni on March 5. DiGiovanni had no such recollection. The board's secretary testified that her files contained no February 12 form. The town clerk testified that the log he kept of zoning-related applications contained no record of the February 12 application. He further stated that no copy of the form remained in his office after he returned the February 12 application to Di-Giovanni. The clerk admitted that he did not usually return such documents to applicants. DiGiovanni had two copies of the February 12 application in his possession. One bore the clerk's "original" stamp, the other was a photocopy. The town clerk could not remember whether DiGiovanni had submitted two copies and had both stamped or whether there was only

---

[5] Knowlton's Field and Rowe Point are synonymous.

one stamped copy of which a photocopy was made for Di-Giovanni's records.[6]

On March 30, 1982, the board held a hearing on Di-Giovanni's March 5 application. In the course of that meeting DiGiovanni's lawyer stated that "[w]e have appealed the decision of the Building Inspector." Later, the lawyer asserted, "We are asking for relief. We did miscalculate. There's no question about it." The board's decision, filed May 12, 1982, treated DiGiovanni's application as a petition for modification of the 1978 variance. The board granted some relief but denied several of DiGiovanni's requests.

Pursuant to G. L. c. 40A, § 17, DiGiovanni appealed to the District Court. The trial judge found, in substance, that Di-Giovanni's February 12 application was an appeal of the stop work order, and was constructively granted because the board failed to act upon it within the time limit specified by G. L. c. 40A, § 15. He found that the board's secretary picked up applications once a week on Friday and that DiGiovanni's February 12 application was found in a board file folder. The judge further found that even if the February 12 application had been a request for modification of the 1978 variance, DiGiovanni was entitled to the variance as a matter of right. He also found that the 1978 plans were *not* made a part of the 1978 variance, that DiGiovanni was not bound to follow the 1978 plans exactly, and that Rockport was "estopped" to contest changes in setback that resulted from the requirements of the town's conservation commission. The judge found that changes in the orientation of the buildings were not substantial or significant deviations from the 1978 variance and that the changes were in any event available for the board's consideration, if not impliedly approved, in 1980.

---

[6] Uncontradicted testimony at trial revealed that it was the town clerk's practice to place applications for the board in a box in his office. On the first Friday of every month at 4:00 P.M. the board's secretary picked up applications and made arrangements for publication of the public hearing notice. February 12, 1982, was the *second* Friday that month. Accordingly, the board secretary would not have taken DiGiovanni's application from the clerk's box until March 5, 1982. It was on this day, the clerk testified, that DiGiovanni "withdrew" his February 12 application.

Based on these findings, the trial judge ruled that the building inspector's stop work order should not have been issued because it was not based "on any substantial evidence"; that the March 5 application was unnecessary and a "nullity"; and that the board's May 12 decision was "arbitrary and not supported by fact or law." The judge, in effect, ordered the building inspector to reissue building permits and ordered vacated "any order, decision, condition, or requirement" of the town of Rockport subsequent to the stop work order.

We review the trial judge's findings and conclusions under Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Findings of fact will not be set aside unless they are clearly erroneous, that is, when there is no evidence to support them or when, "although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160-161 (1977), quoting from *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948). The judge's conclusions of law are not binding on this court. *Newburyport Soc. for the Relief of Aged Women* v. *Noyes,* 287 Mass. 530, 532-533 (1934).

1. *Order Reinstating Building Permits.*

It is well settled in Massachusetts that a "court hearing an appeal from the grant or denial of a variance or a special permit is without administrative discretion . . . . [A court may not substitute] forms of relief different from those originally asked for . . . ." *Geryk* v. *Zoning Appeals Bd. of Easthampton,* 8 Mass. App. Ct. 683, 684-685 (1979). The only relief DiGiovanni requested from the board was a modification of his 1978 variance. The trial judge's characterization of DiGiovanni's February 12 application as an appeal from the building inspector's stop work order is erroneous. If a somewhat ambiguously worded document is understood by all concerned to be a request for a specific form of relief, the notice requirements of G. L. c. 40A, § 15, are satisfied. We do not exalt form over substance in such a case. See *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 553-554 (1962); *Spalke* v. *Board of Appeals of Plymouth,* 7 Mass. App. Ct. 683, 685

(1979). Here, however, DiGiovanni's February 12 application cannot be construed as an appeal founded on the theory that the building inspector's stop work order was wrong as matter of law.[7] The form of relief he requested was "and such other and further relief as the Board deems appropriate," and "further relief from the plans that are on file with the Board of Appeals." No "relief" from the previously filed plans would have been needed if DiGiovanni had intended to assert that his present construction was in substantial compliance with the 1978 variance and that the building inspector had erroneously revoked his permit.

The statutory requirement that § 15 appeals from the decisions of building inspectors "specify[ ] the grounds thereof" we understand as mandatory rather than directory. Generally, boards of appeals are without power to act upon appeals in the absence of public hearings of which the public has been previously notified.[8] The board cannot undertake to notify the public of a hearing unless the board itself has adequate notice of the form of relief petitioners request.[9] Because neither the February 12 nor the March 5 petition was an appeal from the building inspector's decision,[10] the trial judge lacked the power to rescind,

---

[7] In many communities, the procedural path to a variance or special permit is to appeal to the board of appeals from a refusal of the building inspector to issue a building permit on the ground that the plans filed do not comply with the zoning regulations. When we write of an appeal from the building inspector's order in the present case, we refer to an appeal in which the appellee takes the position that he is entitled to a building permit as matter of right under the zoning regulations and that such a permit has been wrongly denied.

[8] A reviewing court may, of course, remand cases to boards for amplification or clarification of their findings or orders. In such instances, however, a hearing has already been held and a record already exists. See also *Dion* v. *Board of Appeals of Waltham,* 344 Mass. at 553.

[9] "We assume that failure to comply with the statutory specifications, if prejudicial, or possibly so, could entail adverse consequences to the appealing party and indeed might defeat the appeal." *Richardson* v. *Zoning Bd. of Appeals of Framingham,* 351 Mass. 375, 379 (1966). While *Richardson* concerned an appeal *from* a board decision, we are persuaded that statutory compliance is equally necessary in appeals to the board.

[10] DiGiovanni's March 5 application requested a "modification of variance." At the March 30 hearing, DiGiovanni's attorney first argued that DiGiovanni did not need a modification because his 1980 plans complied

in effect, the building inspector's stop work order. General Laws c. 40A, § 14, gives the board only the "powers of the officer from whom the appeal is taken." If there is no appeal, the board is without power; if the board has no power, the reviewing court likewise has none. "The board's decision may not [on appeal] be treated as if it were a decision in an appeal [from the building inspector's decision]." *Pelletier* v. *Board of Appeals of Leominster,* 4 Mass. App. Ct. 58, 61 (1976).

This same reasoning also prevents a too vaguely worded application from being constructively granted in accordance with G. L. c. 40A, § 15. "Zoning relief granted constructively is not beyond judicial review. The relief so granted may be tested on appeal under G. L. c. 40A, § 17, to determine whether facts exist which would have enabled the board to grant the relief. Were it otherwise a board of appeals could, through nonaction, put flagrantly unlawful zoning relief beyond judicial review." *Girard* v. *Board of Appeals of Easton,* 14 Mass. App. Ct. 334, 338 (1982). Because boards cannot grant unrequested relief, and because DiGiovanni's February 12 application was not an appeal from the building inspector's decision, a constructive grant of this unrequested relief cannot survive appellate review.[11]

---

with the 1978 variance. The board refused to accept this thesis. The remainder of the hearing was devoted to the question of what sort of variance DiGiovanni needed. We do not confuse matters of strategy at a public hearing with the evident and primary subject matter of the hearing. The board plainly understood that the hearing concerned a variance, not an appeal from the building inspector's decision. This view is strengthened by the fact that DiGiovanni met informally with the board and building inspector on February 23 and pressed the fact that he had "sort of complied" with the 1978 variance. The minutes of the February 23 meeting leave us with the impression that DiGiovanni had been put on notice that an appeal of the building inspector's decision would likely not succeed.

[11] There is an alternative ground for disposing of DiGiovanni's claim that his February 12 application was constructively approved. We conclude that the trial judge's findings that the February 12 application was found in a board file folder and that the board's secretary received applications from the town clerk once a week are clearly erroneous. See note 6, *supra.* These erroneous findings may have unduly influenced the judge's consideration of the credibility of the town clerk, who testified that he returned the February 12 application to DiGiovanni on March 5. "The credibility of

2. *Nullification of the Board's May 12 Decision.*

The trial judge's primary reason for nullifying the board's May 12 decision was that no modification of the 1978 variance was necessary because DiGiovanni had substantially complied with it.[12] This conclusion was based on his determination that the 1978 plans were not incorporated by reference into the 1978 variance, but that the 1978 variance, which was "thoughtfully and deliberately worded," contained "[only] seven conditions." The judge's decision was "predicated solely on documentary evidence [and] permits the appellate court to draw its own conclusions from the record." *Edwin R. Sage Co.* v. *Foley,* 12 Mass. App. Ct. 20, 26 (1981). The 1978 variance contained the following language: "[T]he siting of the buildings . . . will vindicate the purposes of the building separation and setback requirements . . . . Accordingly, a variance is granted so as to permit a 'cluster' development of eighteen units as shown by the plans submitted to (and on file with) this Board . . . ."

We think it axiomatic that when a variance is granted for a project "as shown by . . . plans" that on their face give no indication that they are preliminary plans,[13] the variance re-

---

witnesses, particularly, is a preserve of the trial judge upon which an appellate court treads with great reluctance. . . . But it is not forbidden territory." *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 310 (1981). There can be no constructive approval of applications voluntarily withdrawn from the board's consideration.

[12] The judge's determination that Rockport is estopped to assert deviations from the site plan occasioned by the town's conservation commission requirements is incorrect as matter of law. "The right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of its officers." *Cullen* v. *Building Inspector of No. Attleborough,* 353 Mass. 671, 675 (1968). See also *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 162 (1962). Likewise, neither the board nor the building inspector can approve nonconforming plans "by implication."

[13] "Examination of the plans . . . show[s] them to be complete and comprehensive portrayals of the proposed development in sufficient detail to permit determination by the board of all issues of real substance . . . . The plans were very much more than mere schematic outlines of the proposal." *Balas* v. *Zoning Bd. of Appeals of Plymouth,* 13 Mass. App. Ct. 995, 996 (1982).

quires strict compliance with the plans, at least as far as the site location and the bulk of buildings are concerned. In granting a variance, a board may "impose conditions, safeguards and limitations both of time and of use, including the continued existence of any particular structures." G. L. c. 40A, § 10. Given that no one has a legal right to a variance, *Rose* v. *Board of Appeals of Wrentham,* 352 Mass. 301, 303 (1967), we conclude that the language of a variance is to be construed against the individual requesting the variance, rather than against the granting authority.[14] Therefore, the trial judge erred in finding that DiGiovanni's site plans were not of themselves a "condition" imposed by the 1978 variance.

Because the 1978 plans were incorporated by reference in the 1978 variance, and because the development (as built according to the 1980 plans) differs from that shown on the 1978 plans,[15] it remains only to determine whether portions of Di-

---

[14] Where noncompliance amounts to a matter of inches, we might reach a different conclusion. However, a substantial shift in building locations and near obliteration of the sea view of residents across the street from the locus cannot be trivialized.

[15] The board described the major discrepancies as follows: "*First,* whereas we had approved four clusters separated by no less than 15 feet, the four buildings and fourteen other foundations . . . are in six clusters, two pairs of which are separated by 6 feet 2 inches at the farthest and 3 feet 4 inches at the closest. *Second,* one extremely important feature of the [approved 1978 plans] . . . is a 30 foot space between the clusters at the end of the point. That space preserves a view of the ocean from Granite Street. As built, the four buildings are only 15 feet from the adjacent foundations, and the buildings and foundations are at an angle to Granite Street that would further narrow the view. *Third,* according to the [1978 plans,] the buildings on the north and south . . . are arranged in an irregular manner . . . . [T]hey were 'designed so as to give a sense of separation which tends to compensate for the lack of actual separation.' In contrast, the foundations built by [DiGiovanni] are in rows more typical of traditional highway motel designs. *Fourth,* according to the [1978 plans], all buildings are to be at least 275 feet from Granite Street, and our 1978 decision placed great importance on 'the resulting open space' as a factor compensating for the lack of building separation and setbacks . . . . It is therefore of grave concern that one of the foundations built by [DiGiovanni] comes within 260 feet of Granite Street."

Giovanni's request for modification of the 1978 variance were appropriately denied by the board.[16]

The board's decision states that the board was "unable to find any substantial legal hardship due to circumstances relating to soil conditions, shape or topography of the land or unique to this land." The board further found that DiGiovanni himself created the financial hardship of which he now complains. The trial judge is required to review the board's decision de novo and determine the legal validity of its decision on the facts as found by him. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 558-559 (1954). *Garvey* v. *Board of Appeals of Amherst,* 9 Mass. App. Ct. 856, 856 (1980). The judge (hypothetically) found that even if DiGiovanni had needed a variance, "[t]he reassertion of all [1978] findings of the Board from which there has been no change plus the additional hardship of being required in effect by the Conservation Commission to increase the setback from the top of the ledge is sufficient to support the continuity of the originally granted relief."

This finding is erroneous in several respects. Because we have already determined that the 1980 plans were not in substantial compliance with the 1978 variance, the board's 1978 "hardship" findings cannot be used to justify the changes DiGiovanni made. Moreover, a variance becomes for some purposes part of a town's zoning by-law. The hardships justifying the grant of a variance no longer exist precisely because a variance *has* been granted. DiGiovanni may not argue that the conservation commission's setback requirements constituted a hardship that justified his unilateral departure from the terms

---

[16] The board, while expressly finding no statutory hardship, purported to grant a variance, which we have not been asked to review, for "a modified plan changing the siting of the buildings so long as it preserves both the separations, between clusters and the [275 foot] public open space between the project and Granite Street. In other words, the modified plan must provide a minimum of 15 feet between any buildings or groups of buildings that are not immediately adjacent . . . . [T]he modified plan must leave enough open space at the end of the point to provide a visual corridor perpendicular to Granite Street and at least 30 feet wide (measured parallel to Granite Street) at its narrowest point."

of the 1978 variance. The hardship from which he now suffers is the cost of correcting the unlawful siting of his buildings. If the commission's requirements prevented him from complying with his 1978 plans, it was for the board, not DiGiovanni, to provide relief.[17] Finally, while we agree that it is a misfortune that DiGiovanni has built buildings where they ought not to have been built, this is not the type of hardship that justifies a variance. *Stark* v. *Board of Appeals of Quincy,* 341 Mass. 118, 122 (1960). *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 163 (1962). *Smith* v. *Zoning Bd. of Appeals of Scituate,* 347 Mass. 755, 759 (1964). See *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 41 (1969).

Under G. L. c. 40A, § 17, a trial judge is instructed to annul a board's decision if he finds it "to exceed the authority of [the] board." "The judge's function on appeal was to ascertain whether the reasons given by the . . . [board] had a substantial basis in fact, or were, on the contrary, mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law." *Vazza Properties, Inc.* v. *City Council of Woburn,* 1 Mass. App. Ct. 308, 312 (1973). The fact that DiGiovanni's 1980 plans and construction violated the 1978 variance "was sufficient explanation for denial of a variance, especially on a record which falls well short of establishing facts which would have authorized the board to grant a variance." *Gamache* v. *Acushnet,* 14 Mass. App. Ct. 215, 220 (1982). The denial of a variance is in excess of a board's authority only when the variance has been denied *solely* on a legally untenable ground or when the decision is "unreasonable, whimsical, capricious, or arbitrary." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. at 557, 559-560. Whether a variance *ought* to be granted is an administrative decision. *Ibid.* The board's finding that no hardship exists is a valid

---

[17] The board ultimately denied relief from the 1978 setback requirements. A comment at the 1982 hearing by a member of the conservation commission was to the effect that the commission had neither required nor "approved" a decrease in the setback from Granite Street. The board was, we think, entitled to find that a decrease in the 1978 setback was not required by the topography of Rowe Point. G. L. c. 40A, § 10.

reason for denying a variance. The board did not act unreasonably or arbitrarily in requiring DiGiovanni to conform some aspects of his construction to the express terms of the 1978 variance. "[T]he burden rests upon the person seeking a variance . . . to produce evidence at the hearing in the Superior Court that the statutory prerequisites have been met and that the variance is justified." *Dion* v. *Board of Appeals of Waltham,* 344 Mass. at 555-556. DiGiovanni has not satisfied this burden. Therefore, nullification of the board's decision as being in excess of its authority was error.

The judgment declaring the board's May 12, 1982, decision a nullity is reversed. The order requiring that DiGiovanni and Rowe Estates, Inc., be restored to their position prior to February 4, 1982, is vacated. The order vacating "any order, decision, condition, or requirement of . . . Rockport" and the order reinstating permits and rights to build are likewise vacated. A judgment is to be entered stating that the board's decision did not exceed its authority.

*So ordered.*