Padden *v.* West Boylston.

CAROLYN PADDEN & others[1] *vs.* WEST BOYLSTON & others.[2]

No. 04-P-987.

Worcester. November 5, 2004. - July 26, 2005.

Present: LENK, DUFFLY, & KANTROWITZ, JJ.

*Sewage Disposal. Sewer. Municipal Corporations,* Board of health, Regulations, Sewers. *Notice,* Timeliness. *Practice, Civil,* Notice of appeal.

The notice of appeal of a defendant in a civil action satisfied the requirements of Mass.R.A.P. 4(a), despite its description as an amended notice of appeal rather than as a new notice, where it clearly and expressly referenced the final judgments from which appeal was being taken, and where the notice was filed subsequent to the filing and denial of motions to alter or amend the judgment and to stay the judgment pending appeal. [123-124]

In a civil action by the plaintiffs (individuals who owned residences serviced by subsurface wastewater disposal systems in the defendant town) to challenge a mandatory sewer connection regulation that had been promulgated by the town's board of health, the judge erred in declaring the regulation invalid, where it was rationally related to the protection of public health and safety. [124-130]

CIVIL ACTION commenced in the Superior Court Department on August 20, 2003.

The case was heard by *John S. McCann*, J., and motions to alter or amend the judgment and for a stay pending appeal were also heard by him.

*Gregg J. Corbo* for the defendants.

*M. Yvonne Gonzalez* for the plaintiffs.

LENK, J. Carolyn Padden and other individuals who own

___

[1]Donald S. Smith, Nils Robertson, Theresa Robertson, John M. Ford, Kazys Adomavicius, Teresa Adomavicius, Peter Bourn, Philippe Chevalier, Raymond Chevalier, Shirley Chevalier, Daniel F. Daly, John Hollingsworth, J. Hamilton Given, Patrick Inderwish, Bruce Peterson, Gary Peterson, Claire Ramstrom, David Raphael, Peter Wyatt, Barbara Wyatt, Old Stone Village Condo Trust, and Richard Quimby.

[2]The board of selectmen of West Boylston and the board of health of West Boylston.

residences serviced by subsurface wastewater disposal systems (septic systems) in the town of West Boylston (town) brought suit against the town to challenge a mandatory sewer connection regulation that had been promulgated by the West Boylston board of health (board of health). The plaintiffs sought declaratory and injunctive relief on a preliminary and permanent basis. Their request for preliminary injunctive relief was consolidated with a jury-waived trial on the merits; the trial judge declared the regulation invalid and, in essence, permanently enjoined the town from enforcing the regulation. The town now appeals, claiming that the judge erred in declaring the regulation invalid because it is rationally related to the protection of public health and safety. We agree and vacate the judgment.

*Background.* The town is located on the western side of the Wachusett Reservoir, which supplies water to the greater Boston area through the Massachusetts Water Resource Authority (MWRA) and is managed and maintained by the Metropolitan District Commission (MDC).[3]

In the early 1990's, the MDC conducted and commissioned several studies of the watershed area, revealing significant water quality problems in the brook tributary to the reservoir. The studies recommended the development of a sewer system that would service certain areas of West Boylston generating wastewater that was not adequately serviced by septic systems. Additional studies of the watershed and of groundwater pollution were conducted through the late 1990's and into 2002, assessing whether property in certain areas of the town could be brought into compliance with Title 5 septic system regulations[4] or would require connection to the sewer system.

At town meetings in October, 1995; May, 1997; and October, 1997, town residents voted to borrow money, assess betterments, establish a mechanism for collecting unpaid sewer fees, establish a board of sewer commissioners, and offer low interest

---

[3]Effective July 1, 2003, pursuant to G. L. c. 21, § 1, the MDC merged with the former Department of Environmental Management to become the Department of Conservation and Recreation (DCR). It is the DCR that now manages and maintains the reservoir system.

[4]Title 5 of the State environmental code, 310 Code Mass. Regs. §§ 15.000 (1995), governs the siting, construction, inspection, and maintenance of on-site septic systems.

loans for the upgrade of septic systems and sewer connections. By 2001, however, the nascent sewer system was encountering considerable financial difficulty.

Although the town's sewer system had initially been intended for use in areas where Title 5 compliance could not be achieved, the town, in May of 2002, sought to cast a wider net by adopting a by-law, pursuant to G. L. c. 40, § 21, requiring the owners of abutting properties generating wastewater to connect to the public sewer. Town residents, however, voted not to adopt the by-law at the May 20, 2002, annual town meeting. Two weeks later, the board of selectmen met to discuss the situation and, at that June 1, 2002, meeting, decided to meet with the board of health and draft for it a mandatory sewer connection regulation. Several such meetings thereafter took place.

A public hearing on the proposed board of health regulation took place on August 28, 2002, in which town residents voiced their concerns. Nonetheless, the board of health adopted the mandatory sewer connection regulation on September 25, 2002, to take effect on January 2, 2003.[5]

The plaintiff homeowners then brought this action seeking declaratory and injunctive relief. More specifically, they sought (1) an order that the town and the board of health cease enforcing the mandatory sewer connection regulation; (2) a declaration that the board of health had adopted the regulation based on impermissible criteria and without authority; (3) an order enjoining the town's selectmen from unlawfully interfering with the board of health in the future; and (4) a preliminary injunction enjoining enforcement of the regulation during the course of the litigation. Since the parties appeared to be in agreement on the essential facts, the judge ordered the trial of the action on the merits to be advanced and consolidated with the hearing

---

[5]The regulation stated that "[t]he owners of all houses, buildings or properties used for human occupancy . . . or in any way generating wastewater flows, situated within the town of West Boylston and abutting on any street, alley or right-of-way in which there is located, or may in the future be located, a public sanitary sewer line . . . shall be required to connect to the same by a building sewer as defined in the town of West Boylston Sewer Regulations. Such connection shall be within one year from the date of the official mailed notice of sewer service availability, by the town of West Boylston, acting by or through the Board of Sewer Commissioners, or its successor."

of the application for preliminary injunctive relief pursuant to the provisions of Mass.R.Civ.P. 65(b)(2), 365 Mass. 833 (1974). After a jury-waived trial, the judge concluded that the challenged mandatory sewer connection regulation was unrelated to public health and safety; he accordingly declared it invalid and, in essence, permanently enjoined the board of health from enforcing it.

The town filed a notice of appeal on November 26, 2003. On December 18, 2003, it filed a motion to alter or amend, pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), and a motion to stay the judgment pending appeal, pursuant to Mass.R.Civ.P. 62(c), 365 Mass. 830 (1974). Both motions were denied on March 8, 2004. On April 8, 2004, an "amended notice of appeal" was entered on the docket stating that the town was amending "the Notice of Appeals to the Appeals Court from the judgment of [the Superior Court] dated October 31, 2003 . . . to also include appeal of [the Superior Court's] March 8, 2004, denial of defendant's Motion to Alter or Amend and Motion for Stay Pending Appeal."

*Compliance with Mass.R.A.P. 4(a).* The plaintiffs contend that this appeal should be dismissed for failure to comply with Mass. R.A.P. 4(a),[6] asserting that the April 8, 2004, amended notice of appeal was a nullity, as the underlying November 26, 2003, notice of appeal was extinguished when the town filed its December 18, 2003, motions. They argue that the town should have filed a new notice of appeal subsequent to the denial of its December 18, 2003, motions, but did not do so.[7]

Case law is clear that rule 4(a) "meant what it said viz., a

---

[6]Mass.R.A.P. 4(a), as amended, 393 Mass. 1239 (1985), states, in pertinent part, "If a timely motion under the Massachusetts Rules of Civil Procedure is filed in the lower court by any party . . . under Rule 59 to alter or amend a judgment . . . the time for appeal for all parties shall run from the entry of the order . . . granting or denying . . . such motion. A notice of appeal filed before the disposition of . . . the . . . motion[] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing the motion . . . ."

[7]The plaintiffs also contend that the amended notice of appeal was, in effect, invalidated by an April 12, 2004, order of the single justice in denying, without prejudice, the town's request for a stay of the trial court's order pending appeal. The plaintiffs misapprehend the chronology of relevant events. The single justice noted in this order that the town had not yet perfected its

premature notice of appeal 'shall have no effect.' " *Blackburn*
v. *Blackburn*, 22 Mass. App. Ct. 633, 634 (1986), quoting from
*Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 61
(1982). Appellate courts must "give unqualified effect to the
language" of rule 4(a), which instructs that "an appeal founded
on a notice of appeal filed prior to disposition of a postjudg-
ment motion under Mass.R.Civ.P. 50(b), 52(b) or 59 is a nullity
and shall be dismissed." *Anthony* v. *Anthony*, 21 Mass. App. Ct.
299, 302 (1985). The rule is premised on the "undesirability of
having a case proceed along the appellate path on the basis of a
judgment that might be modified. Such a state of affairs was, at
best, disorderly, and at worst, it was likely to provoke mischief
if a trial court and an appellate court possessed power to modify
the same judgment." *Finn* v. *McNeil*, 23 Mass. App. Ct. 367,
369 (1987).

We are persuaded that the April 8, 2004, notice filed by the
town was a new notice of appeal that satisfied the requirements
of rule 4(a). Although the town might well have been more
clear in the language it used (describing it as an "amended
notice of appeal" rather than as a new notice of appeal), this
linguistic shortcoming is not dispositive in the circumstances.
See *Lewis* v. *Emerson*, 391 Mass. 517, 520 (1984) ("it is not
fair to prevent the parties' exercise of . . . appellate rights on
the basis of clerical niceties"). The town's April 8, 2004, notice
clearly and expressly referenced the final judgments from which
appeal was being taken, thereby putting the parties and the
court on notice of the judgments from which the town appealed.
We think it of particular importance that the April 8, 2004,
notice was filed subsequent to the filing and denial of the
December 18, 2003, motions. Contrast *Blackburn* v. *Blackburn*,
*supra* at 634-635; *Baxter* v. *Board of Appeals of Barnstable*, 29
Mass. App. Ct. 993, 994 (1990); *West Springfield* v. *Olympic
Lounge, Inc.*, 45 Mass. App. Ct. 923, 923 (1998).

*Analysis.* The mandatory sewer connection regulation adopted
by the board of health "stands on the same footing as would a

---

appeal because the original notice of appeal, filed November 26, 2003, had
been rendered a nullity when the town filed posttrial motions. At the time the
single justice so ruled, on April 12, 2004, the docket apparently did not reflect
the town's amended notice of appeal, filed on April 8, 2004.

statute," and the reviewing court must make all rational presumptions in favor of its validity. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138 (1949). A party challenging such a regulation must prove that it "is illegal, arbitrary, or capricious," and must establish the "absence of any conceivable grounds upon which the [regulation] may be upheld." *Massachusetts Fedn. of Teachers* v. *Board of Educ.*, 436 Mass. 763, 771 (2002), quoting from *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 722, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). The plaintiffs cannot meet this burden by "arguing [, as they do,] that the record does not affirmatively show facts that support the regulation." *Ibid.*, quoting from *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980). "Rather, 'we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.' " *Ibid.*, quoting from *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977).

In reviewing the regulation, we are "not concerned whether there was substantial evidence in a record before the agency, but rather . . . whether, based solely on the record *made in court*, the adoption of the agency regulation was illegal, arbitrary, or capricious" (emphasis original). *Tri-Nel Mgmt., Inc.* v. *Board of Health of Barnstable*, 433 Mass. 217, 219-220 (2001), quoting from *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. 122, 126 (1982). We may consider "relevant information, including that provided in the briefs in determining whether there was a rational basis" for the regulation. *Borden, Inc.* v. *Commissioner of Pub. Health*, *supra* at 725 n.13.

Our review of a regulation, then, is not like our review of the outcome of an administrative hearing, and we may not "check back on the agency's 'reasons' and 'determination[s]' of fact and law[, as it] would have an unhealthy tendency to substitute the court for the agency as a policymaker." *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass 474, 491 (1973). "[A] regulation that is irreconcilable with an agency's

enabling legislation," however, may not stand. *Massachusetts Fedn. of Teachers* v. *Board of Educ., supra* at 771-772, quoting from *Quincy* v. *Massachusetts Water Resources Auth.*, 421 Mass. 463, 468 (1995).

The board of health adopted the present regulation under the authority of G. L. c. 83, §§ 3[8] and 11,[9] and G. L. c. 111, §§ 31,[10] 122,[11] and 127.[12] Chapter 111, § 31, alone "confers plenary power [upon local boards of health] to promulgate health regula-

---

[8]General Laws c. 83, § 3, states, in part, "The board or officers of a city or town having charge of the repair and maintenance of sewers may, upon request of the owner of land and payment by him of the actual cost thereof, construct a particular sewer from the street line to a house or building. A town may appropriate money for connecting estates within its limits with common sewers, and no estate shall, in any year in which such an appropriation is made, be connected with a common sewer except in the manner hereinafter provided. . . . If the board of health of a town making such appropriation shall order land abutting upon a public or private way in which a common sewer has been laid to be connected with such sewer, or if the owner of such land shall make to the board or officer having charge of the maintenance and repair of sewers application to connect his land with a common sewer, such board or officer shall make such connection."

[9]General Laws c. 83, § 11, states, "The board of health of a town may require the owner or occupant of any building upon land abutting on a public or private way, in which there is a common sewer, to connect the same therewith by a sufficient drain, and such owner or occupant who fails to comply with such order shall be punished by a fine of not more than two hundred dollars."

[10]General Laws c. 111, § 31, states, in part, "Boards of health may make reasonable health regulations. . . . No regulation or amendment thereto which relates to the minimum requirements for subsurface disposal of sanitary sewage as provided by the [S]tate environmental code shall be adopted until such time as the board of health shall hold a public hearing thereon . . . . Prior to the adoption of any regulation or amendment which exceeds the minimum requirements for subsurface disposal of sanitary sewage as provided by the [S]tate environmental code, a board of health shall state at said public hearing the local conditions which exist or reasons for exceeding such minimum requirements."

[11]General Laws c. 111, § 122, states, in part, "The board of health shall examine into all nuisances, sources of filth and causes of sickness within its town . . . which may, in its opinion, be injurious to the public health, shall destroy, remove or prevent the same as the case may require, and shall make regulations for the public health and safety relative thereto . . ."

[12]General Laws c. 111, § 127, states, in part, "The board of health of a city or town may make and enforce regulations for the public health and safety relative to house drainage and connection with common sewers, if such a sewer abuts the estate to be drained."

tions — reasonable ones — that are general in application." *Hamel* v. *Board of Health of Edgartown*, 40 Mass. App. Ct. 420, 423 (1996). "Health regulations have a strong presumption of validity . . . . A court may invalidate the regulation only when there is no rational relation between [it] and its stated public health purpose." *Tri-Nel Mgmt., Inc.* v. *Board of Health of Barnstable*, *supra* at 220.

The stated health purpose of the challenged regulation is "the protection of the public health, safety, welfare and environment and for the further purpose of ensuring the protection of the Wachusett Reservoir, a public water supply." To prevail in their challenge, the plaintiffs must prove that the sewer regulation lacks any nexus with public health and safety. They contend in this regard that Title 5 compliant septic systems, such as the ones servicing their property, pose no danger to the public health or safety. Even if they were to have established that presently compliant systems pose no such danger, however, the regulation will not be invalidated if there is a "conceivable ground" upon which the board could rationally have concluded that Title 5 compliant systems may nonetheless represent a danger to public health and safety.

In his affidavit, Robert Barrell, chairman of the board of health, stated that "[a]ccording to John Scannell and Patricia Austin of the MDC, who met with the board of health on April 9, 2003, even an on-site septic system that passes a Title 5 inspection can contribute pollution to the groundwater due to a hidden failure when the soil below the system stops providing appropriate treatment for septage." We note that Title 5 requires that septic systems be evaluated only in connection with the transfer of a property serviced by such a system. See 310 Code Mass. Regs. § 15.301(1) (1995).[13] Further, Joseph M. McGinn, director of the division of watershed management of the MDC,

---

[13]Title 310 Code Mass. Regs. § 15.301(1) (1995) states, "Except as provided in 310 [Code Mass. Regs §] 15.301(2), 15.301(3), and 15.301(4), a system shall be inspected at or within two years prior to the time of transfer of title to the facility served by the system. An inspection conducted up to three years before the time of transfer may be used if the inspection report is accompanied by system pumping records demonstrating that the system has been pumped at least once a year during that time. If weather conditions preclude inspection at the time of transfer, the inspection may be completed as

stated in a letter to the board of health that "[t]he second major reason for compelling the earliest connection of other properties to the sewer is to reverse as quickly as possible the continuing degradation and pollution of the ground and surface waters of the Wachusett Reservoir watershed by inadequate septic systems . . . ." Given this, the board of health could plausibly have adopted the challenged mandatory sewer connection regulation based on the logic that, over time, a once compliant system could become a noncompliant, failing system, that the failure might well remain undetected for some period of time, and that the undetected failing system would, until detected and brought back into compliance, contribute to pollution. This constitutes a "conceivable ground" upon which the board of health could properly have based its adoption of the mandatory sewer connection regulation.

Relying on *Home Builders Assn. of Cape Cod, Inc.* v. *Cape Cod Commn.*, 441 Mass. 724 (2004), and *Hamel* v. *Board of Health of Edgartown*, *supra*, the plaintiffs contend that the MDC studies did not provide the board of health with sufficient scientific basis upon which to base the mandatory sewer regulation. To be sure, the two cases upon which the plaintiffs rely do draw more precise connections between the scientific studies conducted and the challenged regulations than are present here.[14] Such level of precision is not, however, the prerequisite for promulgation of a regulation that the plaintiffs

___

soon as weather permits, but in no even later than six months after the transfer, provided that the seller notifies the buyer in writing of the requirements of 310 [Code Mass. Regs. §§] 15.300 through 15.305. A copy of the inspection report shall be submitted to the buyer or other person acquiring title to the facility served by the system."

[14]The scientific studies proffered to the board of health in support of the challenged regulation focused on areas of the town in which Title 5 compliance could not be achieved based on soil conditions and other factors, rather than upon presently or previously Title 5 compliant systems. Hence, the studies did not draw the precise connection between the proposed regulation and such compliant systems that might well have been preferable. Nonetheless, there was evidence in studies before the board of health that supported the adoption of a mandatory sewer connection regulation based on public health and safety concerns. In the MDC's "Watershed Protection Plan Update" of July 31, 1998, referenced in the July 1, 2002, letter to the board of health from John Westerling, the town's superintendent of services and drains, the assessment was that "[o]n-site wastewater disposal systems continue to represent a potential source of pathogens and other pollutants of concern to

appear to suggest. A board of health is permitted to take preventative action in order to preserve the public health and safety; it is not required to "wait until the danger materializes" before taking action. *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. at 727 n.19. Nor is it incumbent upon a board of health before taking such action to demand unqualified scientific proof as to its efficiency. *Ibid.* ("Some doubts [about] whether [a particular type of insulation] properly installed in houses will cause the symptoms characteristic of exposure to formaldehyde will not stay the commissioner's hand"). Lack of such level of scientific proof does not prevent regulatory action. See *Commonwealth* v. *Leis*, 355 Mass. 189, 195 (1969). Moreover, as previously discussed, the board of health was required only to have a "conceivable basis" for its action; this it had. The plaintiffs had the burden of showing the absence of a rational relationship between the regulation and public health and safety; this they did not do. Their reliance on *Home Builders* and *Hamel* is unavailing.

The plaintiffs also contend that the subjective motivations of the members of the board of health should be taken into account in determining whether the reasons that the board of health supplied for adopting the mandatory sewer connection regulation were only a pretext. They argue that the real reason for the regulation is the financial difficulties that the town faced in connection with the new sewer system and not genuine public health concerns. Be this as it may, because we have concluded that a nexus between the regulation and public health existed, we need not consider the motives of the board of health. See *Massachusetts Fedn. of Teachers* v. *Board of Educ.*, 436 Mass.

the water supply. . . . [T]hese pollutants may eventually appear as surface water pollution in the tributaries throughout the watershed system and/or migrate via groundwater pathways." In addition, a different study referenced in the same letter to the board of health, "Environmental Quality Assessment Report, Reservoir District, 2002," concluded that "pollutants from failing septic systems . . . have been . . . caus[ing] severe impacts to the macroinvertebrate community . . . . It is expected that sewers will significantly improve water quality in the near future once installation and connections are completed." The plaintiffs' critique of such studies does not, in any event, further their cause, as they cannot prevail simply by arguing that the record does not affirmatively show facts that support the regulation. See *Massachusetts Fedn. of Teachers* v. *Board of Educ.*, 436 Mass. at 772.

at 776-777 ("Where statutory language clearly authorizes actions taken by an agency, the actions are wholly lawful, and we need not look behind them to determine the agency's motives"). Moreover, we are unaware of any controlling precedent in which a regulation was invalidated by virtue of the improper motivation of the agency that adopted it.[15]

Given our conclusion that the challenged regulation is valid, it is unnecessary for us to address the remaining issues raised by the town.[16]

*Conclusion.* The judgment is vacated and a new judgment shall enter declaring that the mandatory sewer connection regulation promulgated by the town's board of health is rationally related to the protection of public health and safety and is, therefore, valid.

*So ordered.*

---

[15]The one case that the plaintiffs cite in this regard, *Marr* v. *Back Bay Architectural Commn.*, 23 Mass. App. Ct. 679, 684 (1987), pertains only to the denial of an individual zoning application and not to a regulation of general application. It is not on point.

[16]It is also unnecessary for us to consider the plaintiffs' assertion that the regulation is improper because it did not provide for a variance mechanism. We express no opinion on this issue because the issue was not raised in the Superior Court proceedings and is not properly before us. See *Sahli* v. *Bull HN Information Sys., Inc.*, 437 Mass. 696, 707 n.20 (2002).