Lu, John T., J.
*61 INTRODUCTION
The defendants, the Board of Health for the Town of Webster and the Town of Webster (Board) ordered the plaintiffs, Clayton and Gail Orcutt (Orcutts), to connect to the town’s public sewer system. This is a certiorari appeal pursuant to G.L.c. 249, §4. Finding that the Board reasonably concluded that the Orcutts’ property abuts a public way under which there is a common sewer and that, in the circumstances of this case, the Board may revoke a variance granted to their predecessor in title, Edward Kokocinski (Kokocinski), the court affirms the Board’s order.[3]
BACKGROUND
The Orcutts live at 150 North Main Street in Webster, Massachusetts. Their property does not touch or have frontage on North Main Street; however, the Orcutts have a private right-of-way easement on a driveway which connects their home with North Main Street, under which runs a public sewer. Instead of using the public sewer, the Orcutts use their fully functioning private septic system.
On November 4, 1983, the Board granted Kokocinski a variance giving him permission to use the existing private septic system. The variance was on Board of Health stationeiy and read as follows: “Dear Mr. Kokocinski, After an inspection of properly at 150 1/2 North Main St. by Mr. Kenneth... hilinski, and Mr. Theodore Chmura it was decided that a water line was too close to the proposed sewer main. Because of the problem of hardship involved in installation of water line, a variance is therefore warranted to use an approved Septic System at this property . . .”[4], [5]
Beginning in early 2005, the Board held several hearings to determine whether to require the Orcutts to connect their property to the public sewer. On October 14, 2005, the Board ordered the Orcutts to connect. The Board issued the order pursuant to the Town ofWebster Bylaw§155.4 (Webster Bylaw), which states that “(t]he Board of Health requires the owner or occupant of any building upon land abutting a public or private way, in which there is a common sewer, to connect the same therewith by sufficient, drain, and such owner who fails to comply with such order shall be punished by a fine of not more than two hundred dollars per month.”
DISCUSSION
Standard of Review
The function of certiorari review is to correct a quasi-judicial tribunal’s errors of law, where the errors of law are apparent on the record, adversely affect the petitioner’s material rights, and the errors would not otherwise be subject to review. See G.L.c. 249, §4; MacHenry v. Civil Service Comm’n, 40 Mass.App.Ct. 632, 634-35 (1996) (Department of Personnel Administration’s interpretation of its role in bypass of promotional candidates was reasonable construction of statute). In seeking relief, a petitioner must demonstrate that any error of law was “so substantial and material that, if allowed to stand, [it] will result in manifest injustice to the petitioner who is without any other remedy.” Tracht v. County Commrs. of Worcester, 318 Mass. 681, 686 (1945).
The court is confined to the record from the proceeding below. It is not the court’s role to make findings of facts or weigh evidence; nor may the court exercise its discretion or substitute its judgment for that of the decision making body. See Pyramid Co. v. Architectural Barriers Bd., 403 Mass. 126, 130 (1988) (evidence supported Architectural Barriers Board’s finding that elevators would provide substantial benefit to handicapped persons); Tracht, 318 Mass. at 686. The court may evaluate the evidentiary basis for the Board’s order, to ensure that it was supported by substantial evidence, because a decision based on facts that are unsupported by substantial evidence is arbitrary and capricious. See Doherty v. Retirement Bd. of Medford, 425 Mass. 130, 135 (1997) (substantial evidence supported retirement board’s crediting of testimony of man of “unsavory character”). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Where the evidence could reasonably support conflicting conclusions, the tribunal’s conclusion takes precedence over any other conclusion the court might have reached. See id. at 135, 141-42.
Analysis
The Orcutts argue that they should not be required to connect to the public sewer because the Webster Bylaw does not apply to their property and their existing private septic system poses no threat to public health. The Orcutts further contend that because Kokocinski received a variance from the Board to use a septic system, they should also have the benefit of the variance.
A. Applicability of the Webster Bylaw to the Orcutts’ Parcel
The Board concluded that the Orcutts’ property fell ■within the purview of the Webster Bylaw based on the Orcutts’ easement over a driveway connecting their lot to North Main Street. G.L.c. 83, §11 authorizes the Board to “require an owner or occupant of any building upon land abutting on a public way, in which there is a common sewer, to connect the same therewith.”
A key issue is whether the Board reasonably exercised its authority in classifying the Orcutts’ property as land abutting a public way with a common sewer within the meaning of G.L.c. 83, §11. See Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 163 n. 11 (1998) (statutes should be interpreted “not alone according to their simple, literal or strict verbal meaning, but in accord with the spirit and intent of the legislation”) (citations omitted); Hrenchuck v. Planning Bd. of Walpole, 8 Mass.App.Ct. 949, 949 (1979) (equating abutting with access). It was reasonable for the *62 Board to conclude that the Orcutts’ easement empowered the Board to require them to connect. The Orcutts’ right-of-way affords them access to North Main Street; the driveway gives their lot access to a public way and their rights in the driveway include a utility easement. Their address is North Main Street. The Board’s interpretation is a natural interpretation of the town bylaw and statute. While other courts have defined the term “abut” differently in various contexts, in light of the facts and circumstances of this case and the intent of the G.L.c. 83, §11, the court finds that the Board reasonably classified the Orcutts as abut-ters.
. B. The Impact on Public Health of the Use of a Private Septic System
The Board’s statutory authority includes the right to pursue its environmental and health and safely objectives. See Padden v. West Boylston, 64 Mass.App.Ct. 120, 129 (2005) (“on-site wastewater disposal systems continue to present a potential source of pathogens and pollutants ... it is expected that sewers will significantly improve water quality”). The Board’s authority includes the power to take preventative measures rather than “wait until the danger materializes.” Borden, Inc. v. Comm’n of Pub. Health, 388 Mass. 707, 727 n.19 (1983) (Superior Court order invalidating Commissioner of Public Health’s regulations banning urea-formaldehyde foamed-in-place insulation (UFFI) reversed). Even without considering the proximiiy of the Orcutts’ property to the French River, the public health benefits of connecting to the public sewer are obvious and support the conclusion that the Board’s order was a reasonable exercise of its authority.
C. The Board’s Revocation of the Variance Granted to Kokocinski
The Orcutts contend that they should have the benefit of the variance granted to Kokocinski.
1. Ambiguity as to Whether the Variance Survived Transfer of the Parcel
The terms of a variance issued by an administrative agency are derived from an interpretation of the variance and the recorded variance decision. Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 205 (2005) (recorded variance had extensive list of permitted uses). If the variance on its face sets forth limitations on a particular use, those limitations are to be strictly construed. Id. at 208. If the variance is ambiguous, then the ambiguity is to be resolved against the holder. Id. at 206, citing DiGiovanni v. Bd. of Appeals of Rockport, 19 Mass.App.Ct. 339, 347 (1985) (District Court reversed board’s order which was based on interpretation of variance that resulted in a finding that buildings were constructed in wrong location. Appeals Court reversed District Court.).
An objective observer might consider the variance to be unambiguous — in that it only benefitted Kokocinski. At best for the Orcutts, the variance was ambiguous as to whether it benefitted them. The variance was addressed to Kokocinski and highlighted the potential financial hardship to him. While it is unclear what factors led the Board to conclude that connection to the public sewer would cause a hardship to Kokocinski, the Orcutts have not articulated why the water line caused them a hardship. The Board could reasonably conclude that a twenty-three-year-old unrecorded variance was not intended to run with the land. The ambiguity must be resolved against the holder of the variance. Licensing Bd. of Fall River, 444 Mass. at 206 citing Digiovanni, 19 Mass.App.Ct. at 347.
2. Change in Circumstances
An agency may reconsider its decisions, particularly where there have been material changes in facts and circumstances. See Stowe v. Bolgna, 32 Mass.App.Ct. 612, 616 (1992), affirmed by 415 Mass. 20 (1993). Circumstances have changed which warrant the Board’s reconsideration of its grant of a variance. The Orcutts’ septic system is now twenty-three years older and probably provides even less environmental protection in comparison to the public sewer. “(E]ven an on-site septic system that passes Title 5 inspection can contribute pollution to the groundwater due to a hidden failure when the soil below the system stops providing appropriate treatment for septage.” Padden v. West Boylston, 64 Mass.App.Ct. 120, 127-28 (2005) (Superior Court order enjoining enforcement of mandatory public sewer connection bylaw reversed).
ORDER
The plaintiffs Clayton and Gail Orcutt’s motion for judgment on the pleadings is DENIED. Judgment shall enter for the defendants Board of Health for the Town of Webster and the Town of Webster.

The Board moves to strike some information contained in the Orcutts’ memorandum of law in support of their motion for judgment on the pleadings. The Board objects to the court’s consideration of evidence that it would cost $30,000 for the Orcutts to connect to the public sewer. Even assuming these projected costs to be true, it would not change the court’s view of what is feasible. The court, therefore, does not reach the issue of whether the motion to strike should be allowed.

Some portions of the variance are illegible. To the extent the content of illegible parts is apparent from context, the court has added the missing information.

The legible portion of the street address for Kokocinski reads, “. . . orris St., Webster . . .”